**Case No.: 24-60304**

## IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

Breeze Smoke, L.L.C.; Texas Wholesale,

*Petitioners,*

v.

Food & Drug Administration; United States Department of Health and Human Services; Xavier Becerra, Secretary, U.S. Department of Health and Human Services; Robert M. Califf, Commissioner of Food & Drugs,

*Respondents.*

On Review Of FDA Marketing Denial Order (STN PM0003303)
Issued Under The Federal Tobacco Control Act

## PETITIONERS' FINAL BRIEF

Eric P. Gotting
KELLER AND HECKMAN LLP
1001 G Street, N.W.
Suite 500 West
Washington, D.C. 20001
Telephone: (202) 434-4100
Facsimile: (202) 434-4646
gotting@khlaw.com
*Counsel for Petitioners*

No. 24-60304, *Breeze Smoke, LLC, et al. v. U.S Food and Drug Administration, et al.*

## CERTIFICATE OF INTERESTED PERSONS

### No. 24-60304; Breeze Smoke, LLC, et al. v. FDA, et al.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Breeze Smoke, LLC (Petitioner)

2. Steven Haddad (Breeze Smoke owner)

3. Mark Faraj (Breeze Smoke owner)

4. Scott Haddad (Breeze Smoke owner)

5. Texas Wholesale (Petitioner)

6. Sakom Investments LLC (d/b/a Texas Wholesale)

7. TW Distributors, LLC (parent company of Sakom Investments)

8. Mohammad Farooq Wazirali (Texas Wholesale owner)

9. Eric P. Gotting (counsel for Petitioners)

10. Azim Chowdhury (counsel for Petitioners)

11. U.S. Food and Drug Administration (Respondent)

12. U.S. Department of Health and Human Services (Respondent)

13. Hon. Merrick B. Garland (U.S. Attorney General)

14. Xavier Becerra (Respondent; HHS Secretary)

No. 24-60304, *Breeze Smoke, LLC, et al. v. U.S Food and Drug Administration, et al.*

15. Samuel R. Bagenstos (HHS General Counsel)

16. Robert M. Califf (Respondent; FDA Commissioner)

17. Brian King (Director, FDA Center for Tobacco Products)

18. Mark Raza (FDA Chief Counsel)

19. Wendy S. Vicente (FDA Deputy Chief Counsel for Litigation)

20. Lindsey E. Powell (counsel for Respondents)

21. Kevin B. Soter (counsel for Respondents)

Petitioner Breeze Smoke, LLC does not have any parent corporation or any publicly held corporation that owns 10% or more of its stock.

Petitioner Texas Wholesale has a parent company – TW Distributors, LLC (parent of Sakom Investments d/b/a Texas Wholesale) – but does not have any publicly held corporation that owns 10% or more of its stock.

/s Eric P. Gotting
*Counsel for Petitioners*

## STATEMENT REGARDING ORAL ARGUMENT

Petitioners request oral argument in this matter. This appeal raises important legal questions under the federal Family Smoking Prevention and Tobacco Control Act ("TCA") and Administrative Procedure Act ("APA"), and in particular Respondent U.S. Food and Drug Administration's ("FDA") denial of marketing authority for Petitioners' Electronic Nicotine Delivery System ("ENDS") products. Therefore, Petitioners believe oral argument will assist the Court in understanding and resolving the issues raised on appeal.

Petitioners note, however, that this Court has repeatedly found that FDA violated the TCA and APA when denying marketing authorization for ENDS products based on the same grounds invoked by FDA in Petitioners' case, including this Court's *en banc* decision in *Wages and White Lion Invs., LLC v. FDA*, 90 F.4th 357 (5th Cir. 2024) ("*Wages*"); *see also R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182 (5th Cir. 2023) (entering stay). This Court also recently entered stays pending judicial review in similar matters based on the controlling precedent in *Wages*. *See, e.g., NicQuid, LLC v. FDA*, No. 24-60272 (5th Cir. Aug. 8, 2024) (ECF 60-1); *Vertigo Vapor, Inc. v. FDA*, No. 24-60332 (5th Cir. Aug. 16, 2024) (ECF 45-1). In fact, this Court, without holding oral argument, vacated similar marketing denial orders in five consolidated cases

based on *Wages*. *SWT Global Supply, Inc. v. FDA*, No. 21-60762, 2024 WL 3595387 (5th Cir. July 31, 2024) (*see* ECF 166 canceling oral argument).

## TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................... i

TABLE OF AUTHORITIES ............................................................................... iii

STATEMENT OF JURISDICTION .................................................................... 1

STATEMENT OF ISSUES................................................................................... 2

STATEMENT OF THE CASE ............................................................................ 4

    I.      Nature of the Case .......................................................................... 4

    II.     The Tobacco Control Act And FDA's Deeming Rule.................. 5

    III.    PMTA Deadlines And FDA Enforcement Discretion.................. 6

    IV.   FDA Instructed Manufacturers That Long-Term Studies
            Were Not Required........................................................................ 6

    V.     FDA Represented That It Would Issue At Least One
            Deficiency Letter To An Applicant Before Issuing A
            Marketing Decision ...................................................................... 8

    VI.    Breeze Smoke And Texas Wholesale ........................................... 9

    VII.   Breeze Smoke's PMTA ................................................................. 9

    VIII.  FDA's Marketing Denial Order ("MDO") And Technical
            Project Lead ("TPL") Review ...................................................... 12

STANDARD OF REVIEW ................................................................................ 14

SUMMARY OF ARGUMENT ........................................................................... 15

ARGUMENT ...................................................................................................... 18

    I.      FDA Failed To Give Breeze Smoke Fair Notice Of The
            Comparative Efficacy Study Requirement And Otherwise
            Acted In An Arbitrary And Capricious Manner By Issuing
            The MDO .................................................................................... 18

    II.     FDA Instituted A De Facto Restriction Or Ban On Non-
            Tobacco Flavored ENDS In Violation Of Notice-And-
            Comment Procedures................................................................... 20

i

CONCLUSION................................................................................. 23

CERTIFICATE OF COMPLIANCE ....................................................... 25

CERTIFICATE OF SERVICE ............................................................... 26

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Chamber of Commerce of the U.S. v. SEC,*
85 F.4th 760 (5th Cir. 2023) ................................................................. 20

*FCC v. Fox Television Stations, Inc.,*
556 U.S. 502 (2009) ............................................................................. 19

*Judulang v. Holder,*
556 U.S. 42 (2011) ............................................................................... 20

*R.J. Reynolds Vapor Co. v. FDA,*
65 F.4th 182 (2023) ............................................ 15, 17, 18, 19, 20, 21, 22

*SWT Global Supply, Inc. v. FDA,*
No. 21-60762, 2024 WL 3595387 (5th Cir. July 31, 2024) ........................ 15

*Texas v. U.S.,*
809 F.3d 134 (5th Cir. 2015) .............................................................22, 23

*U.S. v. Avants,*
367 F.3d 433 (5th Cir. 2004) ................................................................. 20

*Wages and White Lion Invs., LLC v. FDA,*
16 F.4th 1130 (5th Cir. 2021) ................................................................ 15

*Wages and White Lion Invs., LLC v. FDA,*
90 F.4th 357 (5th Cir. 2024) ...............................2, 5, 7, 15, 17, 18, 19, 20, 21

*Wages and White Lion Invs., LLC v. FDA,*
2024 WL 3259693 (No. 23-1038) (July 2, 2024) ....................................... 20

**Statutes**

5 U.S.C. §553 ....................................................................................... 23
5 U.S.C. §706(2)(A) .............................................................................. 14
5 U.S.C. §§706(2)(B)-(D) ....................................................................14, 23
21 U.S.C. §387........................................................................................ 5
21 U.S.C. §387a(a)................................................................................... 5

21 U.S.C. §§387g(a)(1)-(4) ................................................................... 21
21 U.S.C. §§387g(c)-(d) ...................................................................... 21
21 U.S.C. §387j ............................................................................... 1, 5
21 U.S.C. §387j(c)(4) ............................................................................ 6
21 U.S.C. §387j(f) .............................................................................. 20
21 U.S.C. §387*l* .................................................................................. 1
21 U.S.C. §387*l*(a) .............................................................................. 1

**Regulations**

81 Fed. Reg. 28974  (May 10, 2016) ...................................................... 5
84 Fed. Reg. 50566 (September 25, 2019) ......................................... 7, 10
87 Fed. Reg. 26454 (May 4, 2022) ....................................................... 21

## STATEMENT OF JURISDICTION

This Court has jurisdiction under Section 912, 21 U.S.C. §387*l*(a), of the Family Smoking Prevention and Tobacco Control Act ("TCA") to review the U.S. Food and Drug Administration's ("FDA") marketing denial order ("MDO") issued to Petitioner Breeze Smoke, LLC ("Breeze Smoke") on May 13, 2024. The MDO denied marketing authorization sought by Breeze Smoke in a Premarket Tobacco Product Application ("PMTA") filed under Section 910, 21 U.S.C. §387j, of the TCA for various Electronic Nicotine Delivery System ("ENDS") products. The MDO fully and finally decided Breeze Smoke's PMTA at the administrative level. 21 U.S.C. §§387j, 387*l*. Breeze Smoke filed a timely Petition for Review with this Court on June 11, 2024 pursuant to the 30-day deadline set forth in 21 U.S.C. §387*l*(a). Venue is proper in this circuit as Petitioner Texas Wholesale is located in Dallas, Texas. *See also* Unpublished Order issued on July 22, 2024 (ECF 22) denying motion to dismiss based on venue.

1

## STATEMENT OF ISSUES

Petitioner Breeze Smoke, LLC ("Breeze Smoke") filed an extensive Premarket Tobacco Product Application ("PMTA") with Respondent U.S. Food and Drug Administration ("FDA") pursuant to the Family Smoking Prevention and Tobacco Control Act ("TCA") seeking FDA's approval to market and sell various non-tobacco flavored Electronic Nicotine Delivery System ("ENDS") products (*i.e.*, electronic cigarettes).  FDA denied the PMTA because it did not contain a specific type of study – a randomized controlled trial ("RCT"), a longitudinal cohort study, or an unspecified similar study (collectively a "comparative efficacy study") – showing that Breeze Smoke's non-tobacco-flavored ENDS are more effective than Breeze Smoke's tobacco-flavored ENDS in helping adult smokers switch away from traditional cigarettes.  This case raises the following issues:

1.     Did FDA act contrary to this Court's *en banc* decision in *Wages and White Lion Invs., LLC v. FDA*, 90 F.4th 357 (5th Cir. 2024) ("*Wages*"), violate the Administrative Procedure Act ("APA") and the Due Process Clause of the Fifth Amendment, and otherwise proceed in an arbitrary, capricious, and unlawful manner when it failed to give Petitioners fair notice of its comparative efficacy approach or consider Petitioners' legitimate reliance interests when denying Breeze Smoke's PMTAs?

2. Did FDA violate the TCA and otherwise institute a *de facto* restriction or ban on non-tobacco flavored ENDS in violation of the TCA's and APA's notice and comment procedures?

## STATEMENT OF THE CASE

### I.    Nature of the Case

This case challenges Respondent U.S. Food and Drug Administration's ("FDA") denial of marketing authorization for Petitioner Breeze Smoke, LLC's ("Breeze Smoke") non-tobacco flavored Electronic Nicotine Delivery System ("ENDS") products, manufactured and/or sold by Breeze Smoke and Petitioner Texas Wholesale, as unlawful under the Family Smoking Prevention and Tobacco Control Act ("TCA"), the Administrative Procedure Act ("APA"), and the Due Process Clause of the Fifth Amendment.  As required by the TCA, Breeze Smoke submitted to FDA an extensive Premarket Tobacco Product Application ("PMTA") containing information and data demonstrating that its ENDS products meet the TCA's "appropriate for the protection of the public health" ("APPH") standard.[1]

On May 13, 2024, FDA issued Breeze Smoke a marketing denial order ("MDO") prohibiting the continued marketing and sale of Breeze Smoke's ENDS products in the United States.  FDA determined that the PMTA did not contain a single discrete study – *i.e.*, a randomized controlled trial ("RCT"), a

---

[1] The ENDS products manufactured by Breeze Smoke and subject to the MDO are known as "disposable" ENDS.  Appx000004-6.  These devices are pre-filled with e-liquid and are not re-fillable, with the entire device being disposed of after the e-liquid runs out.

longitudinal cohort study, or an unspecified similar study (collectively a "comparative efficacy study") – demonstrating that Breeze Smoke's non-tobacco-flavored ENDS are more efficacious than Breeze Smoke's tobacco-flavored ENDS in helping adult smokers switch away from combustible cigarettes.  Appx000001-2.  This is the same study requirement that this Court vacated in its *en banc* decision *Wages and White Lion Invs., LLC v. FDA*, 90 F.4th 357 (5th Cir. 2024) ("*Wages*").

## II.   The Tobacco Control Act And FDA's Deeming Rule

In 2009, Congress enacted the TCA, amending the Food, Drug and Cosmetic Act ("FDCA"), to give FDA regulatory authority over the marketing and sale of "tobacco products."  21 U.S.C. §387, *et seq.*  Six years later, on August 8, 2016, FDA's "Deeming Rule" went into effect, which applied the TCA to ENDS and other tobacco products that had not been initially regulated under the TCA.  21 U.S.C. §387a(a); 81 Fed. Reg. 28974 (May 10, 2016).

Consequently, ENDS were immediately subject to numerous TCA provisions, including a requirement that ENDS manufacturers, including Breeze Smoke, obtain premarket authorization from FDA before continuing to market and sell their products.  21 U.S.C. §387j.  A manufacturer must submit a PMTA which entails a time-consuming and costly process of compiling extensive scientific, technical, and marketing data, all of which the TCA

requires FDA to review when deciding whether a particular ENDS product meets the TCA's APPH standard. 21 U.S.C. §387j(c)(4).

### III. PMTA Deadlines And FDA Enforcement Discretion

Because the sudden application of the TCA's requirements to ENDS would abruptly force thousands of existing products off the market, FDA established a series of deferred enforcement policies permitting existing ENDS to remain on the market until PMTAs were due. A federal district court ultimately set the PMTA deadline for September 9, 2020. *Am. Academy of Pediatrics, et al. v. FDA*, 8:18-cv-00883-PWG (D. Md.) (Dkt. Nos. 127 & 182). Any ENDS subject to a timely filed PMTA could remain on the market until September 9, 2021, after which the product would be subject to enforcement discretion. *Id.* Petitioners are not aware FDA has ever initiated an enforcement action against an ENDS manufacturer for a product subject to a timely filed PMTA pending before FDA, nor has it received an enforcement action by any governmental agency.

### IV. FDA Instructed Manufacturers That Long-Term Studies Were Not Required

Before Breeze Smoke filed its PMTA, FDA identified what forms of scientific evidence would (and would not) likely be required in a PMTA to demonstrate APPH. To begin, FDA said long-term studies (*e.g.*, clinical studies) would likely not be necessary. In a June 2019 PMTA guidance, FDA

6

advised that it "does not expect that applicants will need to conduct long-term studies to support an application." Appx000240.[2] FDA also identified the types of evidence that might adequately substitute for long-term studies. The guidance stated "[a]lthough randomized clinical trials could address cessation behavior of users of tobacco products, FDA believes this would also be true for observational studies (perception, actual use, or both) examining cessation behaviors." Appx000265.

Further, in a 2019 proposed PMTA rule, FDA said it "recognizes that…long-term data is not available for all categories of products and does not expect that long-term clinical studies (*i.e.*, those lasting approximately 6 months or longer) will need to be conducted for each PMTA." 84 Fed. Reg. 50566, 50619 (Sept. 25, 2019). Then, during an October 2019 public meeting, FDA said "[i]t may be possible to support a marketing order for a[n] ENDS product without conducting new, non-clinical or clinical studies" given other data sources can support this PMTA. Appx000080. And during the October 2018 public meeting, FDA affirmatively stated no specific studies are absolutely required for a PMTA. "[I]t may be possible to support a marketing

---

[2] FDA's Administrative Record Index (ECF 23) curiously does not cite to this guidance, whether the 2019 version or a 2023 updated version. This guidance was discussed repeatedly in the *en banc Wages* decision. *E.g.*, 90 F.4th at 376.

order for an ENDS product…without conducting new non-clinical or clinical studies given other data sources can support the PMTA." Appx000068-69.

The 2019 guidance also suggested that applicants could satisfy the APPH standard by citing scientific literature with "bridging" information showing the studies covered in the literature are similar to those in the PMTA. Appx000240 ("For clinical assessments, instead of conducting clinical studies that span months or years to evaluate potential clinical impact, applicants could demonstrate possible long-term health impact by including existing longer duration studies in the public literature with the appropriate bridging information (i.e., why the data used are applicable to the new tobacco product) and extrapolating from short term studies."). *Id.*

At no time prior to the PMTA filing deadline did FDA state that an ENDS manufacturer must conduct a specific type of clinical or long-term study – *i.e.*, a comparative efficacy study – identified in the MDO, let alone indicate that its absence would prevent an application from receiving a full substantive, scientific review and, instead, *automatically* result in a marketing denial.

## V.    FDA Represented That It Would Issue At Least One Deficiency Letter To An Applicant Before Issuing A Marketing Decision

FDA told manufacturers there would be some communication during the review process before it made a marketing decision.  During the October 2019 public meeting, FDA stated if it "has any questions or identifies

additional information needed to render a decision, FDA may choose to issue a Deficiency Letter." Appx000280. FDA then clarified at a June 2021 virtual meeting that it would issue at least one "deficiency letter" giving the applicant a chance to correct any shortcomings in the PMTA. Appx000072.

## VI. Breeze Smoke And Texas Wholesale

Breeze Smoke was founded in 2020. All three current owners were former smokers who quit combustible cigarettes using Breeze Smoke products. One of the owners (Steven Haddad) had tried other nicotine options, such as pouches and gums. None worked. It was only after he started using Breeze Smoke products was he able to kick his smoking habit. Breeze Smoke is a mom-and-pop operation with seven employees. The founding member, Mark Faraj, immigrated to the U.S. and worked to build Breeze Smoke into the business it is today.

Texas Wholesale has been in business for 30 years. It has 250 employees and two locations in Texas. It specializes in a broad range of consumer products, distributing to convenience stores, beer and wine stores, and dollar stores. The company sells Breeze Smoke products subject to the MDO.

## VII. Breeze Smoke's PMTA

Breeze Smoke filed its PMTA on September 30, 2020 covering various non-tobacco flavored, disposable ENDS. Appx000004-6. The PMTA was a

significant undertaking.  Breeze Smoke spent hundreds of thousands of dollars on preparing the application, including on legal, consulting, and lab/testing fees.  Overall, the PMTA included data and information requested by FDA as relevant to the APPH standard.

First, as noted above, FDA requested consumer use surveys, *supra* 7,  so Breeze Smoke submitted a survey of retail customers.  All respondents, which included Breeze Smoke ENDS users, were over the age of 21, with the majority (61%) over 30-years old.  Moreover, the respondents had smoked combustible cigarettes, with over 80% having smoked for more than one year.  All respondents were also vapers, with almost 80% having vaped for at least one year.  Importantly, almost 100% of the respondents reported that vaping products helped them stay away from traditional cigarettes, with over 70% indicating they had not smoked a cigarette in at least a year.  And tellingly, 95% of those individuals preferred using non-tobacco flavors as opposed to tobacco-flavored ENDS.  Appx000054-62.

Second, before Breeze Smoke filed its PMTA, FDA told manufacturers that marketing plans were key to obtaining an APPH finding.  In a September 2019 proposed PMTA rule, FDA stated marketing plans would be "critical." 84 Fed. Reg. 50566, 50581 (Sept. 25, 2019).  In the June 2019 PMTA guidance, FDA said it would weigh marketing and access restrictions that

would decrease the likelihood of underage use. Appx00239. In its PMTA, Breeze Smoke therefore proposed marketing restrictions, such as labels that warn against underage use, not employing kid-friendly advertising (*e.g.*, cartoons, caricatures), not relying on social media influencers and celebrities, and only using age appropriate adults in marketing materials. Appx000063-64. Breeze Smoke also outlined access restrictions for retailers, such as ID checks for consumers over 27 years old, no free samples, and a prohibition on the use of vending machines. *Id.*

Third, Breeze Smoke included an extensive public literature review in which they bridged to Breeze Smoke products. The literature review is over 100-pages covering 120-plus scientific studies in peer-reviewed articles showing that there is "great harm reduction to adult smokers who switch to ENDS use" and that "ENDS use is a benefit to the population as a whole." Appx000066. It further concluded:

> Flavored e-liquids are beneficial to those smokers wishing to reduce or cease their use of combustible cigarettes. In fact, smokers who vaped flavored e-liquids were more likely to quit smoking than those who vaped tobacco flavors. Recent studies find that the use of ENDS increases the likelihood of smoking cessation and also the reduction of the number of cigarettes smoked per day. When compared to traditional nicotine replacement therapy, ENDS were found to be more effective and cost efficient. ENDS use is positively correlated with smoking abstinence and overall quit rates. The odds of success while using ENDS products to stop smoking are increased by using nicotine

11

containing products vs. non-nicotine containing products, more frequent use of ENDS products, and peer support.

Appx000065-66.  Breeze Smoke also offered bridging material showing the composition of its ENDS made them materially similar to the products examined in the literature.  Appx000067.

## VIII. FDA's Marketing Denial Order ("MDO") And Technical Project Lead ("TPL") Review

FDA issued the MDO to Breeze Smoke on May 13, 2024, well over three years after Breeze Smoke filed its PMTA.  Appx000001-8.  Although FDA had previously indicated that long-term studies would likely not be required, *supra* 6-8, it found Breeze Smoke's products are not APPH because the PMTA "lack[ed] sufficient evidence demonstrating that your flavored ENDS will provide a benefit to adult users that would be adequate to outweigh the risks to youth."  Appx000001.  Specifically, FDA rejected the PMTA because it did not contain a comparative efficacy study – a single, highly-specific study designed to elicit one datapoint – *i.e.*, a randomized controlled and/or longitudinal cohort study or other study that compared the cessation benefits over time of Breeze Smoke's non-tobacco flavored products and a comparator tobacco-flavored product (*i.e.*, a comparative efficacy study). Appx000002.

12

FDA further claimed Breeze Smoke's marketing and other underage restrictions would not sufficiently reduce risk to youth from non-tobacco flavored ENDS, and that, despite having requested consumer use surveys from applicants (*supra* 7), a "cross-sectional survey" of consumers submitted by Breeze Smoke did not provide sufficient comparative efficacy data because it purportedly did not involve Breeze Smoke's products, did not measure cessation benefits "over time," and did not compare non-tobacco and tobacco-flavored ENDS. Appx000002.

According to the TPL underlying the MDO, FDA instead only conducted a "targeted review" of Breeze Smoke's PMTA and determined a full scientific review was "unnecessary." Appx000013, -18. This was based solely on the absence of a comparative efficacy test, the fact that Breeze Smoke's marketing and access restrictions did not include what FDA referred to as "novel" measures in the form of "device access restrictions," and the same criticisms lodged in the MDO regarding the "cross-sectional survey." Appx000012, -33. And contrary to prior representations, FDA now suggested that reliance on public scientific literature with bridging information would no longer suffice. Appx000026. Indeed, the TPL spends little time discussing Breeze Smoke's products specifically and, instead, appears to consist largely of mere boilerplate.

13

FDA concluded, despite having not reviewed the entire PMTA, Breeze Smoke could not overcome these alleged shortcomings and show a net benefit, and thus for efficiency's sake, it would deny. Appx000018. In fact, wholly unrelated to the APPH standard, FDA complained that conducting a "multi-disciplined scientific review" would be too "labor-intensive and time-consuming" given the "large volume of [filed] applications" and instead argued only a "screen[ing]" process was warranted. *Id.*

## STANDARD OF REVIEW

When an ENDS manufacturer challenges an MDO, the TCA requires this Court's review be conducted pursuant to the APA, 5 U.S.C. §706(2)(A). Specifically, the Court must evaluate whether the MDO was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* Because Petitioners also challenge the lawfulness of the MDO under the TCA itself and the Due Process Clause of the Fifth Amendment, the Court must also determine whether the MDO is: (i) contrary to constitutional right, power, privilege, or immunity; (ii) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or (iii) without observance of procedure required by law. 5 U.S.C. §§706(2)(B)-(D).

14

## SUMMARY OF ARGUMENT

This Court has repeatedly found Respondent U.S. Food and Drug Administration ("FDA") defied administrative law when denying marketing authorization for Electronic Nicotine Delivery System ("ENDS") products under the Family Smoking Prevention and Tobacco Control Act ("TCA"). Initially, two orders stayed FDA denials, with an *en banc* decision finding extensive violations of the TCA, Administrative Procedure Act ("APA"), and the Due Process Clause of the Fifth Amendment. *Wages and White Lion Invs., LLC v. FDA*, 90 F.4th 357 (5th Cir. 2024) ("*Wages*") (*en banc*); *R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182 (5th Cir. 2023) ("*RJR*") (stay); *Wages and White Lion Invs., LLC v. FDA*, 16 F.4th 1130 (5th Cir. 2021) (stay).

Unfortunately, FDA has refused to comply. It has continued to issue marketing denial orders ("MDOs") for non-tobacco flavored ENDS on the same grounds that this Court has already found unlawful. In fact, this Court in just the last month has vacated outright or entered stays pending judicial review of the same type of marketing denial orders ("MDO") based on the controlling precedent in *Wages*. *See, e.g.*, *SWT Global Supply, Inc. v. FDA*, No. 21-60762, 2024 WL 3595387 (5th Cir. July 31, 2024) (vacatur in consolidated cases); *NicQuid, LLC v. FDA*, No. 24-60272 (5th Cir. August 8, 2024) (ECF 60-

15

1) (stay); *Vertigo Vapor, Inc. v. FDA*, No. 24-60332 (5th Cir. Aug. 16, 2024) (ECF 45-1) (stay).

As to the instant case, FDA recently issued an MDO for various non-tobacco flavored ENDS manufactured and/or sold by Petitioners Breeze Smoke, LLC ("Breeze Smoke") and Texas Wholesale.  FDA did so without conducting a full scientific review because Breeze Smoke's Premarket Tobacco Product Application ("PMTA") did not contain a long-term study that FDA never told manufacturers was required.  This is the same rationale used by FDA to reject PMTAs for over one-million non-tobacco flavored ENDS, including applications for Wages and RJR.

In this petition, Petitioners make the following arguments:

1.      FDA failed to give Breeze Smoke fair notice that it would be required to submit a highly specific, long-term study – *i.e.*, a randomized controlled trial, a longitudinal cohort study, or similar (but unspecified) study (collectively a "comparative efficacy study") – that addressed whether Breeze Smoke's non-tobacco flavored ENDS are better at helping adult smokers quit smoking than comparator tobacco-flavored products.

Before Breeze Smoke filed its PMTA, FDA provided substantial guidance and direction on the extensive information that manufacturers would need to submit in order to satisfy the TCA's "appropriate for the protection of

16

the public health" ("APPH") standard and obtain marketing authorization. At no point, however, did FDA mention a comparative efficacy study or that it would be required to avoid an *automatic* MDO.

As an *en banc* panel of this Court determined in *Wages*, this constituted arbitrary and capricious decision-making under the Administrative Procedure Act ("APA"), as well as a violation of the Due Process Clause of the Fifth Amendment, given there was no adequate notice of the comparative efficacy study requirement, FDA failed to explain its change in position as to what evidence would satisfy the APPH standard, and FDA ignored the legitimate reliance interests of manufacturers like Breeze Smoke.

2.      The MDO violates the TCA and APA because FDA did not comply with applicable notice-and-comment procedures. As this Court held in *Wages* and *RJR*, FDA has essentially imposed a *de facto* ban on all flavored ENDS through the comparative efficacy study requirement. However, a flavor ban amounts to a "tobacco product standard" under the TCA, which in turn, must be promulgated through the TCA's own notice-and-comment procedures. Moreover, as FDA staff had virtually no discretion to grant marketing authorization if a comparative efficacy study was not included in a PMTA, it was also obligated to comply with the APA's rulemaking procedures. FDA did not do either.

17

## ARGUMENT

**I.   FDA Failed To Give Breeze Smoke Fair Notice Of The Comparative Efficacy Study Requirement And Otherwise Acted In An Arbitrary And Capricious Manner By Issuing The MDO**

This Court found in *Wages* and *RJR* that FDA wholly failed to give manufacturers of non-tobacco flavored ENDS fair notice of the grounds underlying the MDOs, including the comparative efficacy study requirement. "[A]gencies must give notice of conduct [it] 'prohibits or requires' and cannot 'surprise' a party by penalizing it for good faith reliance" on its prior positions. *RJR*, 65 F.4th at 189 (citation omitted); *Wages*, 90 F.4th at 374 (noting the "fair notice doctrine is rooted in the Fifth Amendment's Due Process Clause.").

Before the 2020 PMTA filing deadline, FDA repeatedly told manufacturers – through PMTA and enforcement guidance, a proposed PMTA rule, and public meetings – that applicants would not be required, particularly on pain of an *automatic* MDO, to submit long-term studies. Instead, FDA said "actual use" studies/consumer surveys and a published literature review could support an APPH finding. However, FDA never told applicants it was an absolute requirement that a PMTA contain a long-term test specifically comparing the cessation benefits of their non-tobacco and tobacco-flavored products. *Wages*, 90 F.4th at 374-81. Indeed, the MDO

18

"move[d] the scientific goalposts" when it set forth, for the first time, the comparative efficacy study requirement. *Id.* at 379.

Moreover, the "APA demands that the agency display awareness that it is changing position…An agency may not, for example, depart from a policy *sub silentio.*" *Wages*, 90 F.4th at 381 (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)) (internal quotations omitted). In *Wages*, this Court found that FDA entirely failed to acknowledge its dramatic shift from prior guidance and other public statements regarding what types of studies would likely be considered adequate for an APPH showing and the subsequent comparative efficacy study requirement. 90 F.4th at 383-84.

Further, when an agency adopts a new policy, it must account for legitimate reliance interests. *Wages*, 90 F.4th at 384-85; *RJR*, 65 F.4th at 189-91. Here, Breeze Smoke relied in good faith on FDA's prior representations. It submitted a PMTA containing, among other evidence, the very types of literature reviews and survey data FDA said could support an APPH finding, but now suddenly maintains are irrelevant. *Supra* 6-8. As this Court held, nowhere in FDA's guidance or other public statements did it acknowledge manufacturers' legitimate reliance on FDA's statements leading up to the PMTA filing deadline. *Wages*, 90 F.4th at 385-86; *RJR*, 65 F.4th at 190.

19

Finally, agencies must account for such interests by considering alternatives to the new policy. Indeed, FDA could have easily sent a deficiency letter to Breeze Smoke requesting a comparative efficacy study. *Supra* 8-9 (FDA indicating it would issue one deficiency letter before making a marketing decision); *RJR*, 65 F.4th at 191. Or FDA could have granted marketing authorization but required post-market surveillance to ensure minors have not initiated use of Breeze Smoke's products. 21 U.S.C. §387j(f). But FDA did not consider either option.[3]

As the *en banc* decision in *Wages* is controlling, *U.S. v. Avants*, 367 F.3d 433, 441 (5th Cir. 2004), the MDO should be vacated on this basis alone.[4]

## II.    FDA Instituted A De Facto Restriction Or Ban On Non-Tobacco Flavored ENDS In Violation Of Notice-And-Comment Procedures

As this Court found in *Wages* and *RJR*, FDA has unlawfully applied the comparative efficacy test to effectively achieve a *de facto* ban on non-tobacco

---

[3] In fact, FDA was motivated by at least one factor in the MDO that is entirely irrelevant to the APPH standard. FDA griped that a "multi-disciplined scientific review" would be too time-consuming given the number of PMTAs that were filed. *Supra* 14. However, efficiency goals "cannot save an arbitrary agency policy." *Judulang v. Holder*, 565 U.S. 42, 63-64 (2011) (holding irrelevant agency goal to save time and money).

[4] The U.S. Supreme Court recently granted a writ of certiorari in *Wages*. 2024 WL 3259693 (No. 23-1038) (July 2, 2024). However, *Wages* remains "binding precedent unless and until the Supreme Court says otherwise." *Chamber of Commerce of the U.S. v. SEC*, 85 F.4th 760, 768 n.4 (5th Cir. 2023).

20

flavored ENDS without complying with the TCA's notice-and-comment procedures. The TCA requires notice-and-comment rulemaking when adopting a "tobacco product standard." 21 U.S.C. §§387g(c)-(d). Congress further indicated that a restriction or ban on flavors is a tobacco product standard. 21 U.S.C. §§387g(a)(1)-(4); *Wages*, 90 F.4th at 384 n.5; *RJR*, 65 F.4th at 192. Indeed, FDA conceded as much when it issued in 2022 a proposed rule for a tobacco product standard that would have banned menthol as a characterizing flavor in cigarettes. 87 Fed. Reg. 26454, 26456 (May 4, 2022); *see* Appx000207 (2020 enforcement guidance stating that "restricting or eliminating the use of flavors" in ENDS would be a "tobacco product standard").

Yet, without notice-and-comment, FDA weaponized the comparative efficacy test to ensure MDOs would be issued for virtually 100% of all non-tobacco flavored ENDS. *RJR*, 65 F.4th at 192; *Wages*, 90 F.4th at 384 n.5; *see* https://tinyurl.com/2sdcmtr2 (FDA tracker indicating MDOs have been issued for over 1.2 million ENDS). *Wages* held "FDA unquestionably failed to follow §387g's notice-and-comment obligations before imposing its *de facto* ban on flavored cigarettes." 90 F.4th at 384 n.5. Although FDA recently approved four menthol-flavored, closed-system ENDS manufactured by NJOY, https://tinyurl.com/m6d846d3, those ENDS constitute a mere 0.000333% of

21

the total number of products denied marketing authorization pursuant to the comparative efficacy test requirement.

As explained in *RJR*, the comparative efficacy test as applied also amounts to a substantive rule requiring notice-and-comment rulemaking. That test was the result of a "fatal flaw" policy adopted in 2021 in which FDA reviewers were instructed to deny any PMTA that did not contain such data. Although FDA has claimed the internal memos memorializing that approach have been rescinded, this Court found it "has remained in full effect for all non-tobacco flavored" ENDS. *RJR*, 65 F.4th at 193 n.9. In this Circuit, whether FDA's comparative efficacy approach is a substantive rule "turns on whether an agency intends to bind *itself* to a particular legal position." *Id.* at 193 (italics in original) (citations omitted). "An action is binding if it appears on its face to be binding, is applied by the agency in a way that indicates it is binding, or retracts an agency's discretion to adopt a different view of the law." *Id.* (citations omitted).

As this Court held, the comparative efficacy test is binding on FDA staff, has been applied in practice as if it is binding, and has impacted the rights of thousands of applicants. *Id.* at 192-94. *Texas v. U.S.*, 809 F.3d 134, 171-73 (5th Cir. 2015) (finding immigration policy binding and thus requiring notice-and-comment rulemaking because it was applied in same manner across 95% of

22

thousands of applications).  In fact, even if the comparative efficacy test requirement does not constitute a tobacco product standard, notice-and-comment rulemaking would still be required under the APA.  5 U.S.C. §553 (requiring agencies to give public notice and allow interested persons to submit comments); 5 U.S.C. §706(2)(D) (allowing courts to hold unlawful and set aside agency action "found to be…without observance of procedure required by law"); *Texas*, 809 F.3d at 171 (applying APA notice-and-comment rules to policy that had been enforced as if it was binding).

To be clear, this is not FDA coincidently reaching the same conclusion after a case-by-case evaluation of hundreds-of-thousands of PMTAs for non-tobacco flavored ENDS.  Rather, FDA applies the comparative efficacy test, as it did here, in check-the-box fashion even before conducting a full scientific review.  This is nothing more than a vehicle to institute a flavor ban and avoid rulemaking procedures.

## CONCLUSION

This Court should grant the Petition for Review, and vacate and remand the MDO for further agency proceedings.

Dated: February 9, 2026

/s Eric P. Gotting
Eric P. Gotting
KELLER AND HECKMAN LLP
1001 G Street, NW
Suite 500 West
Washington, DC 20001
Telephone: (202) 434-4100
Facsimile: (202) 434-4646
gotting@khlaw.com
*Counsel for Petitioners*

## CERTIFICATE OF COMPLIANCE

I hereby certify the foregoing complies with the length limitations of Federal Rule of Appellate Procedure ("Rule") 27(d)(2)(A) because it is 4627 words, excluding the parts that are exempted under Rule 32(f).  It complies with the typeface and type-style requirements of Rule 32(a)(5) and Rule 32(a)(6) because it is printed in 14-point Calisto MT font.


/s Eric P. Gotting
Eric P. Gotting

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2026, a true and correct copy of the foregoing was filed via the Court's CM/ECF system and served via electronic filing upon all counsel of record in this case.

/s Eric P. Gotting
Eric P. Gotting